THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GLENN STANDISH, Appellant.

County Court, Chenango County, September, 1933.

*H. K. Angell*, for the appellant.

*Glenn F. Carter, District Attorney*, for the respondent.

BROWN, J.  The defendant is charged with having committed the crime of assault in the third degree, as defined in subdivision 2 of section 244 of the Penal Law, alleged to have been committed on or about March 25, 1933.  A warrant for his arrest was issued by a justice of the peace of the town of Lincklaen, Chenango county, and, following his arrest, he demanded a trial by jury, which was subsequently had, resulting in a verdict finding him guilty of the crime charged, and he was sentenced by the justice to imprisonment in the Chenango county jail for a term of 112 days and the payment of a fine of $100; in default of payment, to serve one day for each dollar of the fine unpaid.

The defendant appeals to this court and assigns various errors in the trial before the justice seeking a reversal of the judgment of conviction.  Third degree assault, as applied to this case, is defined by section 244 as follows: " A person who  *  *  *  2. Operates or drives or directs or knowingly and wilfully permits any one subject to his commands to operate or drive any vehicle of any kind in a culpably negligent manner whereby another suffers bodily injury.

" Is guilty of assault in the third degree."

Briefly, the facts appearing from the record indicate that, in the evening of March 24, 1933, the defendant, in company with one Herbert Haas and Kenneth Rainbow, left the village of Cincinnatus in a Chevrolet sedan to attend a dance in the vicinity of DeRuyter and at a point between Lincklaen and the former mentioned village. As a result of an accident on the way, Kenneth Rainbow suffered injuries from which he died.  Evidence has been given of two accidents, one occurring at or near a bridge along the highway between Lincklaen and DeRuyter and the second occurring between Lincklaen and Pitcher.  So far as appears from the record, there was no eye witness to the accidents other than the occupants of the car. Following the second accident, which occurred in the vicinity of a culvert, the car was overturned in the ditch and laid on one side. The glass in the windshield of the car was broken out and the glass in the doors on the right-hand side of the car was also broken. The right front fender was marred along its edge, showing it had

come in contact with some object, and the hub cap on the right front wheel was also damaged. The running board on the right side of the car was bent or, as some of the witnesses described it, " pushed up." The right front door of the car was also torn off and the door handle broken and found along the road. At the bridge where the first accident occurred, the easterly guard rail showed marks indicating contact with some other object. Glass was shattered upon and along the easterly side of the highway and, a short distance from the northerly end of the bridge, a pool of blood was found. Following the second accident, the defendant sought aid at a nearby farmhouse. When Mr. Custer, who was called, reached the automobile, he found Herbert Haas in the car and also the body of Kenneth Rainbow; the latter was dead. The evidence quite clearly indicates that the death of Mr. Rainbow resulted from injuries received at the first accident occurring at or near the bridge. The guilt or innocence of the defendant should be determined by what occurred prior to and at the time of the accident at the bridge.

The negligence relied upon by the People to sustain the charge of assault in the third degree rests upon evidence offered to show that Herbert Haas, the driver of the car at the time of the first accident, was intoxicated. The People offered evidence to show that the three occupants of the car, after leaving Cincinnatus, stopped on two occasions and drank beer. The question of the intoxication of the defendant and of Haas became a sharply contested issue on the trial, the People offering evidence to show intoxication and the defendant contesting such claim by producing evidence indicating that neither the defendant nor Haas was intoxicated. That issue, of course, became one for the jury to determine and was important as bearing upon the question of the negligence, if any, of the driver of the car.

It is not disputed that, at the time of the first accident, Haas was at the wheel. The defendant claims that, a short time prior to the first accident, he was sick, got out of the car and vomited; he then got into the car in the rear seat and Haas, who previously had been riding next to him in the front seat and between the defendant and Rainbow, took the wheel and proceeded to operate the car. Vomit was found on the highway a short distance south of the bridge at the time of the examination made by officers and other witnesses for the People.

The injuries suffered by Mr. Rainbow consisted of " a big gash across the back of neck, minor bruises on the body, some marks on his hands." The undertaker having charge of the body was of the opinion that the skull was fractured.

The defendant attacks the validity of the conviction in the Court of Special Sessions on several grounds: 1. That the defendant was deprived of a substantial right because he had no opportunity to be present personally or to be represented by any other person at the time of the drawing of the jury. 2. That an error was committed at the time of the selection of the jurors in not allowing his challenge to the jurors Husted, Duncan and Burdick. 3. That he was required to exercise peremptory challenges to his prejudice. 4. That the testimony of the People's witness, Lewis Barrows, was improperly received over defendant's objection. 5. That the testimony of the defendant elicited on his cross-examination by the district attorney, showing that he remained silent at the time of the entry of a plea of guilty by the driver of the car, was improperly admitted and its admission constitutes reversible error. 6. That evidence of the conviction of Haas, the driver of the car, was improperly received and calls for a reversal of the judgment. 7. That the proof failed to show the commission of the crime charged in the information by the defendant.

It appears that the defendant was charged with assault in the third degree by an information and pleaded not guilty to the charge and the date of trial was fixed for April 14, 1933. On that date a trial was had in a Court of Special Sessions in the town of Lincklaen before a jury. In that trial the jury failed to agree, was discharged and a retrial set for April 21, 1933. At the time the date for the retrial was named, the defendant and his counsel were present. A jury was not drawn at that time. On April eighteenth the justice drew from the box a panel of jurors for attendance at the trial to be had April twenty-first, the drawing taking place in the presence of the constable. Neither the defendant nor his counsel nor the district attorney was present, the justice mailing a copy of the list of jurors to the district attorney and to the defendant's attorney. On April 21, 1933, the trial, resulting in the verdict of guilty upon which the conviction in this case is based, was had. Section 703 of the Code of Criminal Procedure regulates the drawing of a jury in the Courts of Special Sessions. The use of the word " forthwith " in the section raises a fair implication that it was the intention of the statute that the jury should be drawn in the presence of the defendant. It does not appear that the defendant or his attorney requested the drawing of the jury following the close of the former trial resulting in a disagreement of the jury. Evidently it was contemplated that the jury would be drawn at a subsequent date. The date for a new trial was fixed on that occasion in the presence of the defendant and his attorney. Apparently the defendant was content that the drawing of the jury take place

at a subsequent date. The defendant could waive his right to be present at the time of the drawing. (*Hallett* v. *Boyer*, 114 N. Y. Supp. 559.) The record does not show a consent of the defendant that the drawing of the jury might take place in his absence. The record shows that the justice attempted to send word to the defendant of the time when the jury would be drawn but does not show that such word was given; at the trial which took place April 21, 1933, the defendant did not object to the manner or time of drawing the jury or because it was drawn in his absence and without his having received notice and expressed himself through counsel as satisfied except as to the court's ruling cn the challenges to the jurors Husted, Duncan and Burdick. The defendant makes no claim that there was any improper conduct on the part of the justice or the constable at the time the jurors were drawn from the box on April eighteenth and alleges no irregularity in connection with such drawing except the fact that the defendant was not present and had no knowledge that the drawing was to take place on that date. I am of the opinion that the defendant, by proceeding to trial without raising the question prior to the acceptance of the jury, waived whatever rights he might have had and cannot urge the error of the justice, if one was committed, at that time as a ground for reversal of the judgment.

Counsel for the defendant urges that the justice erred in overruling the challenges to the jurors Husted, Duncan and Burdick. The record discloses that at least two of the jurors had a prejudice against a person who drove an automobile after having taken a drink of intoxicating beverage, and one, in answer to a question of defendant's counsel, stated that the fact that the defendant may have permitted Haas to drive the car, knowing he had had a drink, would prejudice him against the defendant's case. The record does not show, however, that he would permit such prejudice to influence his verdict. Had the examination of the juror been more exhaustive and further questioning shown to what extent, if any, such prejudice might influence the juror in arriving at a verdict, it would be much easier for this court to determine the question presented by the ruling of the justice in overruling the challenges. In the administration of justice it is important and most essential that jurors selected in criminal actions shall at all times be free from prejudice or bias affecting their consideration of the case. A person may feel so strongly concerning certain subjects or regarding certain phases of our social or economic order that prejudice is aroused; yet under oath as a juror that person might be able to lay aside whatever prejudice he had and conscientiously decide the issue of the guilt

or innocence of a defendant on trial. I am not satisfied, from the record, that the ruling of the justice on the challenges calls for a reversal of the judgment.

During the course of the cross-examination of the defendant, he was asked if he was present in court when Haas was arraigned on the charge of driving while intoxicated, to which he answered in the affirmative. He was then asked what plea Haas made to the charge and, after replying that he pleaded guilty to driving while intoxicated, he was asked if he made any objection or protest to such plea at the time. Counsel for the defendant objected to the question and the objection was overruled and defendant answered that he did not. The jury was asked to infer, from the silence of the defendant and his omission to protest the act of Haas, that he admitted the intoxication of Haas while driving the car. He had previously denied that Haas was intoxicated or that he had any knowledge of his being in an intoxicated condition at the time he took over the driving of the car. The chief issue in this case was the question of the intoxication of Haas, the driver of the car. The People relied on the establishing of such intoxication to show the operation of the car in a culpably negligent manner. The purpose of the evidence offered by the question objected to was to prove an implied admission on the part of the defendant by his silence of the intoxication of Haas while driving the car. The silence of the defendant from which the jury was asked to imply an admission on his part was at a judicial proceeding and on an occasion when such silence could not legally be construed as an admission on the part of the defendant. In *People* v. *Willett* (92 N. Y. 29) we find the following statement: "The doctrine as to silence being taken as an implied admission as to the truth of allegations spoken or uttered in the presence of a person, does not apply to silence at a judicial proceeding or hearing." The receipt of the evidence over the objection of counsel was an error calling for a reversal of the judgment of conviction and a new trial. (*People* v. *Willett, supra; People* v. *Smith,* 172 N. Y. 210; *People* v. *Kennedy,* 164 id. 449; *People* v. *Koerner,* 154 id. 355; *People* v. *Rutigliano,* 261 id. 103.) It is true that the defendant was not a party to the judicial proceedings referred to in the question which was the subject of the objection of counsel. It is equally true that in those proceedings this defendant was taking no part and had no opportunity to make a denial or otherwise be heard, and the rule adopted in the cases above cited would seem to apply to the instant case.

Having reached this conclusion, it becomes unnecessary to consider the other questions raised or to examine the evidence for the

purpose of determining if same is sufficient to justify the verdict rendered.

Under section 768 of the Code of Criminal Procedure, it appears that the new trial should be had in the County Court. (*People ex rel. Watson* v. *Lamphier*, 104 Misc. 622; *People* v. *Affron*, 152 App. Div. 891.)

An order may be granted reversing the judgment of conviction and directing a new trial to be had in the Chenango County Court.